UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**COREY DEAN TURNEY,**

      **Petitioner,**

v.                                                    **Case No: 6:16-cv-363-Orl-37DCI**

**SECRETARY, DEPARTMENT OF CORRECTIONS and ATTORNEY GENERAL, STATE OF FLORIDA,**

      **Respondents.**
_____/

### ORDER

THIS CAUSE is before the Court on Petitioner Corey Dean Turney's Petition for Writ of Habeas Corpus ("Petition," Doc. 1) pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition ("Response," Doc. 4) in accordance with this Court's instructions. Petitioner filed a Reply to the Response ("Reply," Doc. 12).

Petitioner asserts eight grounds for relief. For the following reasons, the Petition is denied.

### I.     PROCEDURAL HISTORY

Petitioner was charged with first degree murder (Count One) and abuse of a dead human body (Count Two). (Doc. 6-1 at 46-47.) A jury found Petitioner guilty of Count One and not guilty of Count Two. (Doc. 6-2 at 79-82.) The trial court sentenced Petitioner to life in prison. (*Id.* at 127.) Petitioner appealed, and the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed *per curiam*. (Doc. 6-5 at 292.)

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the

Florida Rules of Criminal Procedure. (Doc. 6-6 at 5-27.) The state court denied the motion. (*Id.* at 59-68.) Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id.* at 139.)

## II.   LEGAL STANDARDS

### A.   Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies

the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.     Standard For Ineffective Assistance Of Counsel**

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.  ANALYSIS

#### A.  Ground One

Petitioner asserts counsel rendered ineffective assistance by failing to object to the justifiable homicide instruction. (Doc. 1 at 17.) According to Petitioner, his sole defense was self-defense and the instruction improperly led the jury to believe that for justifiable homicide to be applicable, the killing had to occur in a dwelling. (*Id*. at 17-19.) Petitioner further complains that counsel should have requested the standard instruction for justifiable use of deadly force. (*Id*. at 19-20.)

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.  ANALYSIS

#### A.  Ground One

Petitioner asserts counsel rendered ineffective assistance by failing to object to the justifiable homicide instruction. (Doc. 1 at 17.) According to Petitioner, his sole defense was self-defense and the instruction improperly led the jury to believe that for justifiable homicide to be applicable, the killing had to occur in a dwelling. (*Id*. at 17-19.) Petitioner further complains that counsel should have requested the standard instruction for justifiable use of deadly force. (*Id*. at 19-20.)

deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.  ANALYSIS

#### A.  Ground One

Petitioner asserts counsel rendered ineffective assistance by failing to object to the justifiable homicide instruction. (Doc. 1 at 17.) According to Petitioner, his sole defense was self-defense and the instruction improperly led the jury to believe that for justifiable homicide to be applicable, the killing had to occur in a dwelling. (*Id*. at 17-19.) Petitioner further complains that counsel should have requested the standard instruction for justifiable use of deadly force. (*Id*. at 19-20.)

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 60-61.) The state court reasoned that self-defense was not presented as a defense and, as a result, determined that there was no prejudice as a consequence. (*Id*. at 61.)

Initially, the Court notes that Petitioner failed to appeal the denial of this ground. *See* Doc. 6-6 at 102-20. Consequently, this ground is unexhausted and would be procedurally barred from review here. However, Respondents failed to argue that this ground is unexhausted, and the Court declines to *sua sponte* apply the procedural default bar.

In light of the evidence presented at trial, prejudice did not result from counsel's failure to object to the justifiable homicide instruction or request the standard justifiable use of deadly force instruction. Witnesses testified that the victim was neither armed nor threatening anyone when Petitioner shot him. (Doc. 6-4 at 253-54, 256, 271; Doc. 6-5 at 14, 129-31.) More to the point, when the victim asked Petitioner why he was pointing a gun at him, Petitioner responded it was because the victim had ripped him off. (*Id.* at 256.) In sum, a reasonable probability does not exist that the outcome of the trial would have been different but for counsel's failure to object or request additional jury instructions. Accordingly, this ground is denied.

**B.  Ground Two**

Petitioner contends counsel rendered ineffective assistance by failing to request an independent act instruction. (Doc. 1 at 22.) According to Petitioner, in the absence of the instruction, the jury may have been led to believe that the conduct of one of Petitioner's

co-defendants was attributable to him. (*Id*. at 23-24.)

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 62.) The state court reasoned that the independent act instruction was not applicable and counsel's failure to request the instruction was not prejudicial. (*Id*.) Petitioner failed to appeal the denial of this issue. *See* Doc. 6-6 at 102-20. Consequently, this ground is unexhausted and would be procedurally barred from review by this Court. That said, Respondents again failed to argue that this ground is unexhausted, and the Court declines to *sua sponte* apply the procedural default bar.

Pursuant to Florida law, the independent act instruction applies "when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" *Ray v. State*, 755 So. 2d 604, 609 (Fla. 2000) (quoting *Ward v. State*, 568 So. 2d 452, 453 (Fla. 3d DCA 1990)). In such limited circumstances, "a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act." *Id*.

The evidence presented established that Petitioner was the first person to shoot the victim. (Doc. Nos. 6-4 at 256; 6-5 at 14-15, 131.) Thereafter, William Warren ("Warren") and Petitioner shot the victim additional times. (*Id*.) There is no evidence that Warren's acts exceeded the scope of the original plan or that Petitioner did not participate in the acts committed by Warren. Therefore, the independent act instruction was not warranted. Consequently, counsel was not deficient for failing to request the instruction, and

prejudice did not result from counsel's failure to do so. Accordingly, this ground is denied.

C.     **Ground Three**

Petitioner maintains counsel rendered ineffective assistance by failing to object to the admission of firearms that were unrelated to the offense. (Doc. 1 at 26). Specifically, Petitioner argues that insufficient evidence was presented to establish that the Glock .40 pistol and Lorcin .380 pistol were linked to the offense. (*Id*. at 26-27).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 63.) The state court noted that counsel objected to the admission of both guns. (*Id*.) The state court further reasoned that a witness recovered the Glock from the property where the offense occurred, and the Lorcin was recovered when Petitioner was stopped after fleeing from police. (*Id*.) The state court concluded that prejudice did not result from counsel's failure to make additional objections to the admission of the weapons. (*Id*.) The Fifth DCA affirmed *per curiam.* (*Id*. at 139.)

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. Counsel objected to the admission of both firearms based on relevance. (Doc. Nos. 6-4 at 73-74; 6-5 at 101). The trial court, however, overruled the objections. Moreover, Harry Brock ("Brock") testified that he found the Glock at the property where the murder occurred. (Doc. 6-4 at 162-63.) Officer Bonner testified that he recovered the Lorcin, which was thrown from Petitioner's truck, during a chase. (Doc. 6-5 at 72-73.) Evidence was presented that cartridge casings fired from these firearms were recovered at the scene of the offense. (Doc. 6-5 at 106-08.) Consequently, sufficient

evidence was presented to link these weapons to the offense. Counsel, therefore, was not deficient for failing to further object to the admission of the firearms and there was no prejudice. Accordingly, this ground is denied pursuant to § 2254(d).

**D.     Ground Four**

Petitioner asserts counsel rendered ineffective assistance by failing to file a motion to suppress his statement to police. (Doc. 1 at 29.). In support of this ground, Petitioner argues that while at the jail, he told police he was mentally fatigued and did not wish to speak. They stopped questioning him then but subsequently resumed for two hours before recording his statement. (*Id.*) Petitioner further complains that during the recorded interview, after he was *Mirandized*, he invoked his right to remain silent, but the officers continued to question him. (*Id.* at 30-31.)

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 63-64.) The state court reasoned that Petitioner did not make any incriminating statements after he expressed his desire to end the interview and thus prejudice did not result from counsel's failure to move to suppress the statement. (*Id.* at 64.) The Fifth DCA affirmed *per curiam*. (*Id.* at 139.)

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland.* Accepting the veracity of his contention, Petitioner has not established prejudice resulted from counsel's failure to move to suppress his statement. During his interrogation, Petitioner denied knowing where the victim was or having any involvement in his disappearance. (Doc. 6-4 at 187-215.) In other words, Petitioner's statement was not inculpatory. More importantly, the evidence against Petitioner was

overwhelming. Numerous witnesses testified that they saw Petitioner shoot the victim or that Petitioner admitted killing the victim. Assuming that Petitioner's statement had been suppressed, there is no reasonable probability that the outcome of the trial would have been different. Accordingly, this ground is denied pursuant to § 2254(d).

**E.  Ground Five**

Petitioner contends counsel rendered ineffective assistance by failing to file a motion in limine to prohibit testimony that the witnesses had entered pleas or been found guilty of offenses related to this case. (Doc. 1 at 32.) Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 64.) The state court reasoned that counsel had no basis to seek the exclusion of this evidence and prejudice did not result from counsel's failure to do so. (*Id*.) Petitioner failed to appeal the denial of this issue. *See* Doc. 6-6 at 102-20. Consequently, this ground is unexhausted and would be procedurally barred from review by this Court. Here again, Respondents failed to argue that this ground is unexhausted, and the Court declines to *sua sponte* apply the procedural default bar.

"It is well settled under Florida law that the state may not show that a co-defendant or an accomplice pleaded guilty or was convicted because it is not relevant and it may have a very prejudicial effect upon the determination of the guilt or innocence of the defendant." *Johnson v. State*, 976 So. 2d 1216, 1218 (Fla. 4th DCA 2008) (quoting *Travieso v. State*, 480 So. 2d 100, 103 (Fla. 4th DCA 1985)). Therefore, had counsel moved to prohibit the State from eliciting evidence that some of the witnesses had been convicted

in relation to this case, the motion likely would have been granted. This fact alone does not establish deficient performance because the decision may well have been strategic.

Indeed, defense counsel questioned the witnesses about the benefits they received by entering pleas and/or testifying against Petitioner. *See* Doc. Nos. 6-4 at 265-66; 6-5 at 20-21, 133. All of these witnesses avoided a possible life sentence by entering pleas and cooperating with the State. (*Id*.) Absent the jury being aware that these witnesses had been convicted in relation to this case, the defense would not have been able to show the witnesses had a motive to testify against Petitioner. Furthermore, numerous witnesses, some of whom were not convicted in relation to the case, testified that they either saw Petitioner shoot the victim or Petitioner admitted he killed the victim. Consequently, there is no reasonable probability that the outcome of the trial would have been different had counsel filed a motion in limine to prohibit evidence that some of the witnesses had been convicted in relation to the case. Accordingly, this ground is denied.

### F.     Ground Six

Petitioner asserts counsel rendered ineffective assistance by failing to object to a statement made by the prosecutor in opening and to move for a mistrial and to file a motion in limine to prohibit the introduction of a hatchet. (Doc. 1 at 36.) In support of this ground, Petitioner argues that the prosecutor improperly stated that Petitioner used a hatchet to cut out the victim's teeth to keep as a souvenir when there was no evidence of such. (*Id*.) Petitioner further contends that the hatchet would not have been admitted into evidence because it was not established that it was involved in the offense. (*Id*. at 37.)

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 64-65.) The state court reasoned that the prosecutor's comments were not improper because evidence was presented that Petitioner used a hatchet to knock the victim's teeth out and the victim's mandible and maxilla had fragmentations. (*Id*. at 65.) The state court concluded that prejudice did not result from counsel's failure to object or move for a mistrial. (*Id*.) The Fifth DCA affirmed *per curiam.* (*Id*. at 139.)

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. Witnesses testified that after Petitioner shot the victim, he used a hatchet to knock the victim's teeth out. (Doc. 6-5 at 15, 132.) The medical examiner testified that portions of the victim's teeth, mandible, and maxilla were fragmented. (*Id*. at 41, 46.) The hatchet admitted into evidence was discovered at the site of the offense. (Doc. 6-4 at 296-98.) Given that evidence largely supported the prosecutor's statement, counsel was not deficient for failing to object and move for a mistrial on this basis. Moreover, counsel objected to the admission of the hatchet into evidence, arguing that it could not be shown it was the hatchet used in the offense. (*Id*. at 297.) The trial court overruled the objection because there was evidence a hatchet had been used. (*Id*. at 298). Therefore, a reasonable probability does not exist that the outcome of the trial would have been different had counsel objected to the prosecutor's statement or filed a motion in limine. Accordingly, this ground is denied pursuant to § 2254(d).

### G. Ground Seven

Petitioner maintains counsel rendered ineffective assistance by failing to object

and move for a directed verdict based on the jury's finding that the discharge of Petitioner's firearm was not proved to have caused great bodily harm or resulted in death. (Doc. 1 at 40.) According to Petitioner, this resulted in an inconsistent verdict. (*Id*.)

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 65-66.) The state court reasoned that the verdict was not inconsistent. (*Id*.) The state court concluded counsel was not deficient for failing to argue the verdict was inconsistent nor did prejudice result from the failure. (*Id*.) Petitioner failed to appeal the denial of this issue. *See* Doc. 6-6 at 102-20. Consequently, this ground is unexhausted and would be procedurally barred from review by this Court. However, Respondents failed to argue that this ground is unexhausted, and the Court declines to *sua sponte* apply the procedural default bar.

Florida law permits inconsistent verdicts generally "because jury verdicts can be the result of lenity and, therefore, do not always speak to the guilt or innocence of a defendant." *Flores v. State*, 974 So. 2d 556, 558 (Fla. 5th DCA 2008) (citing *Brown v. State*, 959 So. 2d 218, 220 (Fla. 2007)). However, one exception to the general rule on inconsistent verdicts applies. *Id.* Specifically, a verdict will be deemed a true inconsistent verdict and reversed "when an acquittal on one count negates a necessary element for conviction on another count." *Id.* (citing *Brown,* 959 So. 2d at 220).

In the instant case, the medical examiner was unable to determine which shot(s) caused the victim's death because of the body's condition. The jury found Petitioner guilty of first degree murder but made a special finding that it was not proved that the discharge of Petitioner's firearm resulted in death or great bodily harm. (Doc. 6-2 at 81.)

The jury, however, was charged on the principal theory. (Doc. 6-5 at 234.) Evidence was presented that Petitioner and Warren shot the victim. Thus, the jury's verdict was not inconsistent. Consequently, a reasonable probability does not exist that the outcome of the trial would have been different had counsel objected to the verdict or moved for a directed verdict. Accordingly, this ground is denied.

### H. Ground Eight

Petitioner asserts counsel rendered ineffective assistance by failing to object and move for mistrial when the State introduced evidence of uncharged crimes. (Doc. 1 at 43.) In support of this ground, Petitioner notes that Marc Mulholland ("Mulholland") testified that Petitioner robbed him and Michael McMakin ("McMakin") testified that Petitioner told him he had kidnapped and killed someone. (*Id.*)

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-6 at 66.) The state court reasoned that Mulholland's testimony was admissible because the robbery was part of the scheme to get the victim to the location of the murder. (*Id.*) With respect to McMakin's testimony, the state court found the testimony was admissible because it was an admission against Petitioner's penal interest. (*Id.*) The state court concluded that prejudice did not result from counsel's failure to object or move for a mistrial. (*Id.*) The Fifth DCA affirmed *per curiam*. (*Id.* at 139.)

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. Under Florida law,

> evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not *Williams* rule evidence. It is admissible under section 90.402

> because "it is a relevant and inseparable part of the act which is in issue. . . . [I]t is necessary to admit the evidence to adequately describe the deed." Charles W. Ehrhardt, *Florida Evidence* § 404.17 (1993 ed.); *see Gorham v. State,* 454 So.2d 556, 558 (Fla. 1984), *cert. denied,* 469 U.S. 1181, 105 S. Ct. 941, 83 L.Ed.2d 953 (1985); *Erickson v. State,* 565 So.2d 328, 332–33 (Fla. 4th DCA 1990), *review denied,* 576 So.2d 286 (Fla. 1991); *Tumulty v. State,* 489 So.2d 150, 153 (Fla. 4th DCA), *review denied,* 496 So.2d 144 (Fla. 1986).

*Griffin v. State*, 639 So. 2d 966, 968 (Fla. 1994).

In the instant case, Mulholland testified that during the drive to the scene of the offense, Petitioner robbed him of pills and money. Mulholland explained that Petitioner wanted the victim to believe they were going to rob Mulholland presumably as the pretext to get the victim to the site of the offense. (Doc. 6-4 at 251-54.) McMakin testified that Petitioner told him that someone had ripped him off in a drug deal so he kidnapped and killed him. (Doc. 6-5 at 119.) Mulholland's testimony regarding the robbery was inextricably intertwined with the charged offense, namely to explain how Petitioner lured the victim to the murder scene. Although McMakin's testimony that Petitioner said he kidnapped someone was arguably an uncharged crime and inadmissible, a reasonable probability does not exist that the outcome of the trial would have been different had counsel objected to the statement. The evidence of Petitioner's guilt was overwhelming. Thus, there is no reasonable probability that the single reference to an uncharged offense impacted the verdict. Accordingly, this ground is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.     CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability ("COA")

only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the Court's assessment of his grounds debatable or wrong. Thus, the Court will deny Petitioner a COA.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) filed by Corey Dean Turney is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a COA.

3. The Clerk of the Court is directed to enter judgment accordingly and to

close this case.

**DONE** and **ORDERED** in Orlando, Florida on June 28th, 2017.



ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party